ALBANY,<br>Feb. 1825.

Dewey<br>v.<br>Osborn.

Judgment for the plaintiff.

---

DEWEY *against* OSBORN.

TRESPASS *quare clausnm fregit*, tried on the 18th day of July, 1823, at the Washington Circuit, before WALWORTH, C. Judge. The plaintiff gave in evidence an exemplification of a record of judgment in favor of James Jackson *ex dem*. Thaddeus Dewey & John Goodwin against James Barker, Junior, docketed in this Court, on the 10th day

A lessor in an action of ejectment may bring trespass *quare*, &c. against the defendant or his servants for an injury done to the freehold, intermediate the verdict and

*hab. fac. poss.* executed.

After the re-entry of the disseisee, the law supposes the freehold all along to have continued in him; and he may maintain trespass against the disseisor and his servants.

The record of recovery in ejectment is conclusive evidence of title in the lessor of the plaintiff, from the time of the demise laid, against the defendant and his servants; who cannot, therefore, in bar of an action of trespass, show title in another after that time.

Where there are several separate demises in a declaration in ejectment, an action of trespass against the defendant or his servants may be maintained in the name of that lessor upon whose title the recovery was had; and where it appeared that the sheriff delivered possession to one of the several lessors under the *hab. fac. poss.* this was held *prima facie* evidence that the recovery was upon his title.

ALBANY,
Feb. 1825.

Dewey
v.
Osborn.

of August, 1821; and also a writ of possession tested the 10th day of August, 1821, returnable on the first day of the (then) next term of this Court; upon which was endorsed the return of the sheriff of the county of Washington, that, by virtue of the writ of possession, he had, on the 10th day of August, 1821, caused the possession of the premises in the writ of possession mentioned to be delivered to Dewey.

The plaintiff then proved by Henry Thorn, Esquire, that he made the service of the declaration in ejectment about four or five years ago upon Barker; that Barker was then in possession of the premises, and had been in possession for several years then next preceding; and that he continued so in possession until the execution of the writ of possession; that the witness was present at the time when the sheriff turned Barker out of possession, and put Dewey in possession.

Jonathan Rice, a witness for the plaintiff, testified that James Barker, junior, was in possession of about 120 acres of lot No. 24, in the Artillery patent, in the town of Fort Ann, in June, 1821; and had been for a number of years previous to that time; that there was a small framed house, a small barn and a corn house on that part of the lot so possessed by Barker; that in May or June, 1821, the buildings were moved off the lot on to an adjoining lot owned by James Barker. That the defendant's oxen were there, and helped draw the buildings; did not see the defendant do any thing to aid in moving the buildings; thought they were removed on Saturday, and it was before the 1st of July, 1821.

Benjamin Eastman, a witness for the plaintiff, testified that he knew the premises; was present when the buildings were removed; had since heard the defendant say he had assisted in removing them, and expected he should have trouble about it. He did not recollect the words the defendant made use of, but drew this conclusion, that he expected trouble from the fact that Chester Dewey had forbid them removing the buildings; James Barker, junior, was then in possession of the land from which the buildings were removed; and had been, for many years, using it as his own. The house was worth 150 or 200 dollars as it stood, but after prepared for removing,

from 50 to 100 dollars. The buildings were drawn into the adjoining lot owned by old Mr. James Barker, who occupied the land from which the buildings were drawn, for twenty or thirty years before James Barker, junior, went into possession. He succeeded to the possession of his father. The defendant and other neighbors were invited to assist in removing the buildings, and the witness, with the others, attended in consequence of such invitation. He heard some one say that Dewey had recovered the land, but did not hear the defendant say any thing about it, and did not know that he knew it. The defendant told him that he came there to assist James Barker, junior, to remove his buildings, and said he had assisted; that he had a yoke of oxen there, and expected to get into trouble about it, in consequence of the recovery of the plaintiff against James Barker, junior. That James Barker, junior, had been in possession for eight years previous to the removal of the buildings, and that the witness saw him remove grain from off the premises after the buildings were removed. That previous to the removal of the buildings, the recovery of the plaintiff against James Barker, junior, was the subject of conversation among the persons assembled there to assist in the removal. That after the barn and corn house were removed, and before the house was removed, while the company was assembled for the removal of it, Chester Dewey, the son of the plaintiff, came there and said his father had recovered the premises, that they belonged to him, and he had sent him (Chester Dewey) to forbid the removal of the buildings. That the defendant was in a situation to have heard what Chester Dewey said, and it was spoken publicly.

Chester Dewey was also produced as a witness on the part of the plaintiff, and swore that the action of ejectment against James Barker, junior, at the suit of the plaintiff, his father, was tried at the Washington Circuit, on the 4th day of June, 1821, and the buildings were removed from off the premises on Saturday of the next week; and that he, by the direction of his father, the plaintiff, came to the premises at the time they were removing the buildings, and before the

house was removed off the premises, and forbid the company from removing them ; and informed them, that his father had recovered the premises, and that they belonged to him.

It appeared in evidence that the premises, from which the buildings were removed, were the same which had been recovered in the ejectment suit by Dewey the plaintiff, and from which James Barker, junior, had been turned out of possession by virtue of the writ of possession.

The plaintiff then rested his cause, and the defendant applied for a nonsuit, which was overruled.

The defendant then offered to prove that James Barker, junior, put the buildings on the premises for his own use, while he was in possession, claiming to hold the land independent of any right derived from the plaintiff ; but this testimony was objected to and overruled. The defendant then gave in evidence a deed of the premises in question from Adam Patterson to James Barker, dated February 4th, 1796. The defendant then called Abraham Boyce, who testified that James Barker, the elder, went into possession of the premises about the time of the date of the deed, and continued in possession until his son, James Barker, junior, took possession under him, about eight years since ; that the witness never heard Barker say any thing about the title of the land until within about fifteen years ; since which time he had claimed to be the owner, and witness has heard him say he had a better title than any body in this country. The defendant, in bar of the action, then offered to prove that James Barker, junior, held under James Barker, senior ; and that the defendant, in what he did, in relation to the removal of the buildings, acted under the direction, and at the instance of James Barker, the grantee ; but this testimony was objected to by the plaintiff, and the Court decided that the defendant had not shown sufficient to found an adverse possession in Barker, and the testimony was overruled. The defendant then introduced several witnesses to show the value of the buildings, and the jury, under the direction of the Court, found a verdict for the plaintiff for $55 damages.

*D. Russell*, now moved for a new trial. He said, 1. The record produced should not have been admitted as evidence. This was the only evidence of title ; but eject‑ ment is a possessory action, and can give no right against a third person till consummated by possession. The eject‑ ment neither establishes title nor possession. Osborn was not a party nor privy to the suit ; and against any other the record cannot be received. (Peake's Ev. 38.) Suppose the verdict had been the other way, could Osborn, the de‑ fendant, have set up the record against Dewey, in an action of trespass brought by him ? The rights of the parties must be reciprocal. This is the test of admissibility of a record. It must be such as may be used by either party. (*Andrews* v. *Herring*, 5 Mass. Rep. 210. *Fowler* v. *Collins*, 2 Root, 231. *Turpin, Admr.* v. *Thomas' Represen‑ tatives*, 2 Hen. & Munf. 139.) The record would show neither a right of entry nor of property, even against Bar‑ ker, who might have brought his cross action the next moment.

2. Dewey was at most a tenant in common with others, according to his own showing ; and could not recover, if at all, beyond a moiety of the damages equal to his in‑ terest, which could not have been more than one-half.

3. Again. The remedy is misconceived. Trespass *quare clausum fregit* can only be maintained by the per‑ son who has the possession in fact at the time the injury complained of was committed. The mere right of posses‑ sion is not enough ; and for an injury to the freehold, Dewey is the last who ought to sue, because the ejectment establishes no more than a possessory right. Even for an injury to the freehold, the tenant alone can have trespass. (*Campbell* v. *Arnold*, 1 John. Rep. 511, 512. 2 Phil. Ev. 133. *Stuyvesant* v. *Tompkins*, 9 John. Rep. 61. 11 John. 569, S. C. in error. *Wickham* v. *Freeman*, 12 John. 183. *Douglass* v. *Valentine*, 7 John. 273.)

4. The decision of the Judge was incorrect. The deed from Patterson and the evidence of Boyce established both claim to, and color of title in Barker, sufficient to destroy all presumption that the grantee, Barker, senior, held un‑ der Dewey. The possession was clearly adverse. There

ALBANY,
Feb. 1825.

Dewey
v.
Osborn

was a claim of right; and is there a doubt that 20 years having run, the possession would have barred an ejectment? Twenty years possession is a title. (*Taylor ex dem. Atkyns* v. *Horde*, per Ld. Mansfield, 1 Burr. 119.) Here the possession commenced in 1796. Barker then took possession under color of title, and possessed till 1821, which forms a complete presumption of title in him. (*Smith* v. *Lorillard*, 10 John. Rep. 338, 356.) Why then were we not allowed to show that we did the act complained of by direction of Barker, the elder, who had the right?

5. At any rate, whether the possession was adverse or not, was a question which should have been submitted to the jury.

*A. Van Vechten*, contra. We do not controvert any of the legal positions on the part of the defendant. But they do not apply. Here was a recovery in ejectment consummated by a delivery of possession to Dewey; and the question is whether a man who has recovered in ejectment may, between verdict and judgment, be stripped of all the permanent improvements upon the land, through the tenant and the assistance of his neighbors whom he calls in.

It is said the record is not evidence of right. This position takes for granted the main point involved in it. viz : that the defendant was a stranger; whereas he was one of the defendant's assistants in the mischief. The agents must abide the recovery against the principal. If the recovery was conclusive against Barker, it is equally so against all who come to aid and assist him.

The recovery in ejectment, consummated by the execution of a writ of *hab. fac. possess.* before this suit was commenced, gave the plaintiff a right of action for intermediate trespasses committed on the premises. This is plainly so as to the defendant in ejectment; (1 Ch. Pl. 177; *Richard Lifford's case*, 11 Co. 51; *Holcomb* v. *Rawlins*, Cro. Eliz. 540; 3 Bl. Com. 210;) and whatever is evidence against him is so against the present defendant. He identifies himself with the original defendant. He was a joint trespasser with Barker, and liable either jointly or severally. He came, not to

exercise his own rights, but those of Barker. Trespass is usually brought in the name of the lessor for the mesne profits, and the plaintiff may go for all the consequences of the original tortious entry; all the wrongful acts which followed. (*Goodtitle* v. *North et al.* Doug. 584.) The record, in such a case, is conclusive evidence; and can it be pretended that the assistance of half a dozen servants shall shut out the record as against them? It is always conclusive evidence of title, from the day of the demise laid in the declaration. (*Van Alen* v. *Rogers*, 1 John. Cas. 281. *Benson et al.* v. *Matsdorf*, 2 John. Rep. 369.)

[WOODWORTH, J. I think there can be no doubt that the right to recover against the defendant in ejectment, for all the wrong he has committed, follows the judgment in ejectment; and so of all those concerned as his servants, who come to his assistance after ejectment brought.]

The record is, to be sure, evidence of nothing more than that the right has been litigated and finally decided on; but it is conclusive on the defendant, and all claiming under him. (*Blasdale* v. *Babcock*, 1 John. Rep. 517. *Kip* v. *Brigham*, 7 id. 168. *Waldro* v. *Long*, id. 173. *Jackson* v. *Randall*, 11 id. 405. *Outram* v. *Morewood*, 3 East, 346. *Barney* v. *Dewey*, 13 John. Rep. 224. *Jackson* v. *Stone*, id. 447. *Case* v. *Reeve*, 14 id. 79. Runnington on Eject. 438, 439, 441, 442. *Aslin* v. *Parkin*, 2 Burr. 667.) The last of these cases declares that possession is a part of the title; and therefore the recovery cannot be controverted. After the recovery, the lessor is deemed to have all along been in possession. (*Goodtitle* v. *Tombs*, 3 Wils. 118.) Admitting that judgment gives a mere possessory right, this is sufficient, according to the defendant's argument, who insists that the one having possession should bring the action. And, according to Ld. Mansfield, in *Aslin* v. *Parkin*, the record establishes the right to the possession and the possession itself. The rule that the record is evidence only against parties or privies is well established. But when one comes in under the defendant, he is so far privy as to be concluded. Strangers alone are excepted;

those who stand entirely independent of the party. The record would, doubtless, be reciprocally evidence for or against the plaintiff according to the verdict. Had it been for the defendant, it might have been used in this action to evince a want of right in the plaintiff. He had brought the action, examined and cross-examined witnesses and submitted his rights to the jury. The judgment was followed by a writ of possession, executed in favor of Dewey, who still remains in possession. Certainly, this record is evidence, and stands conclusive until contradicted by a cross-ejectment or recovery.

True, if the demise had been joint from Dewey and Goodwin, this action should have been joint and only a moiety of the damages could have been recovered. But this was not so; it was several, and the recovery on the demise of Dewey alone.

Possession was delivered to Dewey alone. He is the one in possession and entitled to the possessory action of trespass. The effect of the recovery is to make the defendant a trespasser *ab initio*.

The adverse possession was in Barker, senior, if in any body. This cannot be used to aid Barker, junior.

*Russel,* in reply. It is not necessary to deny the main positions of the other side. All the authorities cited as to the effect of the recovery relate to the remedy against the tenant himself, for the *mesne* profits. *Benson* v. *Matsdorf,* (2 John. 369,) is a fair sample.

We had a right to defend under Barker, senior, in whom the title, *prima facie,* resided; and who stood entirely independent of the ejectment. The evidence was admissible under the general issue. (*Dodd* v. *Kyffin,* 7 T. R. 350. *Argent* v. *Durrant,* 8 id. 403. 2 Phil. Ev. 138-9.) That the younger Barker suffered judgment against the consent of Barker, senior, does not affect the right of the latter, who was in from 1796; that Barker the younger did not set up Barker senior's title does not preclude our doing it here. If he had cut down all the timber upon the lot, could Dewey for that reason maintain trespass against him? No privity is shown between the two Barkers. To bind the defend-

ant, a privity of estate should be shown between him and the defendant in ejectment. The suit cannot operate against a mere stranger. *Blasdale* v. *Babcock*, (1 John. Rep. 517,) cited on the other side, went upon privity of interest and notice, neither of which is shown here.

Although nominally in favor of James Jackson, the action is, in truth and substance, in behalf of the lessors named; and shall one of these be permitted to recover for the whole? . Suppose the present action in favor of Jackson, the nominal plaintiff, as it might be; clearly he could not bring successive actions for each lessor. The remedy cannot be divided in this manner. Could he recover the entire damages in successive actions? This would be still more unjust and absurd. And can this injustice be worked in another form, by bringing the action in the name of the several lessors? The right of Goodwin, upon the record, appears to be equal with Dewey's. The most favorable light in which he can be viewed is as a tenant in common; and the rule is inflexible in that case, that he can recover only according to his moiety. (*Austin* v. *Hall*, 13 John. Rep. 286.)

*Case* v. *De Goes*, (3 Caines' Rep. 261,) decides that strangers shall not be made liable in trespass by the relation and overreaching of a suit. It is said the defendant was the mere servant of Barker; but there is no foundation for this position in point of fact. We expressly offered to justify under Barker, the elder. That the defendant came to assist young Barker did not preclude his setting up a right in another, which had been consummated by time.

. The form of the action is misconceived also. If there be a remedy, it is by an action on the case.

*Curia*, per SUTHERLAND, J. The defendant acted as the servant, and under the direction of Barker, in removing the buildings, which constitutes the trespass complained of. It was committed after verdict and before judgment in the ejectment suit; and the action was not brought, till after the writ of possession was executed.

The first question which arises is, whether a lessor in ejectment, after he has recovered and been put into posses-

sion can maintain an action of trespass against the defen
dant, or his servants, for an injury done to the freehold, at
this stage of the ejectment suit, and while the defendant
continues in possession.

The general proposition, that trespass *quare clausum fre
git* can be sustained only by the person who had the actual
possession when the injury was committed, cannot be ques
tioned.   But it is also true, that, in case of disseisin, the
disseisee, after he has regained possession by re-entry, may
maintain trespass against the disseisor, and his servants,
for acts intermediate the disseisin and re-entry; *for as to
them the law, after the re-entry, suppose the freehold to
have continued in the disseisee.*   The proposition is thus
laid down and illustrated in *Lifford's case,* (11 Rep. 51,)
"If one disseises me, and, during the disseisin, he cuts
down the trees or grass, or the corn growing upon the land,
and afterwards I re-enter, I shall have an action of trespass
against him *vi et armis,* for the trees, grass, corn, &c.; for,
after my regress, the law, as to the disseisor and his ser-
vants, supposes the freehold always continued in me."
And see *Moore* v. *Hussey,* Hob. 98.   20 Vin. Abr. *Tres-
pass,* (T) pl. 5, p. 465.   3 Bl. Com. 210.   1 Chit. Pl. 177.
*Holcomb* v. *Rawlyns,* Cro. Eliz. 540.   In the last case it
was held that after re-entry, the disseisee could maintain
trespass, not only against the disseisor, but against his
grantee.   The only difficulty upon the point is whether
the remedy shall extend to a stranger who comes in by ti-
tle under the disseisor, or be confined to the disseisor and
his servants.   That the remedy lies against the latter is
unquestionably now the settled law, though otherwise, it
seems, as to strangers.   (*Case* v. *De Goes et al.* 3 Caines'
Rep. 261, 263.   *Wickham* v. *Freeman,* 12 John. Rep. 184.)
The contrary position in 6 Bac. Abr. *Trespass,* (c) pl. 3,
p. 566, that the disseisee of land cannot maintain an action
of trespass *quare clausum fregit,* for an injury done there-
to, betwixt the time of the disseisin, and his re-entry," if it
be intended of the disseisor as well as strangers, clearly is
not law.   The action for the mesne profits is an action of
trespass; and is founded on the principle of possession by
relation of the re-entry.   The damages in that action are

not limited to the rent. Extra damages may be given. (Runn. on Ej. 439, and the cases there cited.) Whether the plaintiff's remedy for the mesne profits is affected by the bringing of this action, is not now a subject of inquiry. I think this action may be maintained.

The record of the recovery in ejectment was competent evidence against the defendant in this suit. He was the servant of the defendant in the ejectment; and acted by his orders. A judgment is evidence, not only against the party; but also against those claiming or acting under him. (Peak. Ev. 38. 1 Phil. Ev. 222–3.)

The evidence of the elder Barker's title was properly rejected. The defendant being the servant of Barker, the defendant in the ejectment, whatever concludes him is conclusive against the present defendant. Now the recovery in ejectment, as between the lessor and the defendant in that suit, was undoubtedly conclusive evidence of the lessor's title, from the time of the demise laid in the declaration. (Runn. on Ej. 441. *Aslin* v. *Parkin*, 2 Burr. 667, 668.)

I am inclined to think that the evidence of adverse possession in James Barker, senior, should also have been excluded; but as nothing like an adverse possession was made out, whether it was or was not properly admitted is immaterial.

There is nothing in the case to show that the plaintiff was a mere tenant in common, and recovered in the ejectment suit in that character. There was a demise from Goodwin as well as the plaintiff; but this does not appear to have been joint; and the case states that the possession was delivered to Dewey. I think we are to intend that the recovery was on his demise; and he was, therefore, entitled to recover the whole damages.

**Motion denied.**