JOHN FUHRER, Appellant, *v.* ARTHUR LANGFORD ET AL., Respondents.

December 13, 1881.

An action for damages for trespass to real estate will lie only at the suit of him who was in possession of the land; except that in case of disseisin, the disseisee may, after he has re-entered into possession, bring an action against the disseisor for acts done between the disseisin and the re-entry.

APPEAL from the St. Charles Circuit Court, EDWARDS, J. *Affirmed*.

N. C. DRYDEN and T. F. McDEARMON, for the appellant.

L. J. DRYDEN, with PEERS & MORSEY, for the respondents.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case alleges that, at the date named,

plaintiff was the owner of certain real estate described ; that, at that date, defendants, by force, and wrongfully, entered upon said land and tore down and carried away a rail fence standing thereon, worth $250. Judgment is asked for the value of the rails and for treble damages under the statute.

There is a second count, setting out the same facts, alleging that the rails so carried away are worth $500, and that plaintiff, by these wrongful acts, is deprived of the use of a tract of land once enclosed by the fence ; by reason of all which, he is damaged $1,000. There is a general denial; and, as special matter of defence, a license from the person in possession at the date of the alleged trespass is set up.

The evidence tended to show that plaintiff and one Henry Langford, were adjoining proprietors. Plaintiff's land adjoined that of Langford on the southeast, and was an unenclosed prairie. Langford erected the fence in controversy, on what he supposed to be his land, cultivated up to it, and for many years, up to the date of the alleged trespass, had possession, openly and peaceably, of the entire enclosure, of which this fence formed a part. Whilst plaintiff and Langford believed that this fence was on Langford's land, plaintiff wished to build a fence, and asked permission of Langford to join his proposed fence to the one in dispute. Langford refused permission. Plaintiff then had a survey made, and discovered that the Langford fence was on plaintiff's land. He notified Langford of this; and Langford then asked permission of plaintiff to move back the fence to his own line, offering to allow him to join in that case. Plaintiff refused permission, and told Langford that he did not want the fence moved, but was willing to let Langford use the land free of charge ; whereupon Langford said he would not agree to any such thing, and told plaintiff to go to the devil. Plaintiff then notified Langford in writing that the fence was on plaintiff's land, and that any attempt by Langford to move it would be

" interfered with according to law." Afterwards, at the request of Langford, the defendants assembled, when plaintiff was absent from home, in attendance upon court as a witness, and moved the fence about twenty feet, and on to Langford's land.

The only instruction asked or given in the case was the following : —

" The testimony of plaintiff having shown that the land and the fence in dispute were, at the time of the alleged trespass, in the possession of one Henry Langford, who occupied and held the same adversely to the plaintiff, the jury are instructed to find for defendant."

There was a verdict and judgment for defendant.

It is well settled that an action for damages for trespass to real property will not lie, unless it appear that, at the time of the trespass, the plaintiff was in possession of the land. *McMenamy* v. *Cohick*, 1 Mo. App. 529 ; *Hill* v. *Million*, 9 Mo. App. 599 ; *Cox* v. *Collender*, 9 Mass. 533 ; 7 Cow. 36 ; 1 Pet. C. Ct. 291 ; 12 Johns. 184. After the disseisee has re-entered, he may, it is true, have an action of trespass against the disseisor for *mesne* profits, or for intermediate damages not necessarily *mesne* profits, during the time of tortious dispossession. This is by a legal fiction. The law, to prevent a failure of justice, supposes the freehold to have been all along in the rightful owner, and he is considered as having had a constructive possession whilst the actual possession was in the disseisor ; by re-entry his possession is restored *ab initio*. Bac. Abr., tit. " Trespass," C ; Roll. 2 Abr., tit. " Trespass," T ; 3 Bla. Comm. 210 ; 4 Kent's Comm. 119 ; 5 Bac. Abr. 166. But this doctrine of entry by relation applies only to the case of disseisor and disseisee. *Wickham* v. *Freeman*, 12 Johns. 184. The operation of relation appears to be only to convert a disseisin into a trespass, and therefore applies only to cases of disseisin. "The general proposition, that trespass *quare clausum fregit*, can be sustained only by the person who had the actual

possession when the injury was committed, cannot be questioned ; but it is also true, that in case of disseisin, the disseisee, after he has regained possession by re-entry, may maintain trespass against the disseisor and his servants for acts intermediate between the disseisin and re-entry, for, as to them, the law, after the re-entry, supposes the freehold to have continued in the disseisee." *Per curiam,* in *Dewey* v. *Osborn,* 4 Cow. 338.

*Case* v. *De Goes* (3 Caines, 261), was trespass for cutting down and carrying away timber, after notice of title and being forbidden.   Defendants justified under a license from one Bull, who was in possession under a writ of restitution in forcible entry and detainer which was afterwards quashed. The verdict against the defendants was set aside on appeal, on the ground that, plaintiff not being in actual possession when the trespass was committed, the action would not lie against defendants, the licensees of Bull.   The court says :  " It has been submitted to the court to determine, whether an action of trespass can be sustained against the present defendants.  We are satisfied it cannot.    *    *    * Bull may be considered a trespasser by relation, and be made answerable for the damages.   But it is a general rule, with respect to the doctrine of relation, that it shall do no wrong to strangers.   16 Vin. Abr. 293.   This rule si fully recognized in *Menrill's Case* (13 Co. 21), where it is said that, by relation, a thing may be considered as annulled *ab initio,* betwixt the same parties, to advance a right ; but the law will never make such a construction to advance a wrong, or to defeat collateral acts which are lawful, and, principally, if they concern strangers.   Thus, also, in *Lifford's Case* (11 Co. 51), it is ruled that, where a person disseised, the disseisee, after re-entry, can maintain trespass against the disseisor ; for the law, as to the disseisor and his servants, will suppose the freehold to have continued in the disseisee ; but not so with respect to strangers who come in by right or title under the disseisor ; they cannot be

made trespassers by relation. * * * The defendants having been warned by plaintiff not to cut the timber cannot affect the question.''

Henry Langford, the disseisor of plaintiff in the case at bar, is not the Langford whose name appears in the title of the case, and is not a defendant. The defendants are all strangers to the disseisee, and their acts complained of were done by the license of the disseisor whilst he was in actual possession. That the plaintiff was not in possession at the time of the trespass is clear; there is no other evidence as to that point, and it is shown by plaintiff's own testimony. We think, therefore, that the court rightly directed a verdict for the defendants, and the judgment should be affirmed.

The judgment is affirmed. Judge Lewis is absent; Judge Thompson concurs.